Filed 10/30/20  P. v. Baker CA4/2
See Concurring Opinion

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072712 |
| v. | (Super.Ct.No. CR56701) |
| MICHAEL SHAWN BAKER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Michael D Butera, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Michael Shawn Baker guilty of first degree murder.  (Pen. Code,[1] § 187, count 1.)  The jury returned a true finding on the special circumstance allegation under section 190.2, subdivision (a)(17)(A), that the murder was committed while engaged in the commission of a robbery.[2]  It also found true the allegation that defendant or a principal was armed with a firearm (former § 12022, subd. (a)(1)), but that finding was stricken.  A trial court sentenced defendant to life without the possibility of parole.  He appealed, and this court affirmed his conviction.  (*People v. Baker* (Aug. 20, 1996, E015610) [nonpub. opn.].)  He subsequently filed a petition for resentencing under section 1170.95, which the court summarily denied.

Defendant filed a timely notice of appeal.  We affirm.

FACTUAL BACKGROUND[3]

"The victim . . . was the owner of a donut shop in Moreno Valley.  On December 23, 1993, at 9 p.m., two men came into the store and shot and robbed him, killing him.

---

[1]  All further statutory references will be to the Penal Code unless otherwise indicated.

[2]  We note that the verdict form erroneously refers to the special circumstance allegation as a violation of section 190.2, subdivision (a)(17)(i).

[3]  The factual summary is taken from this court's prior unpublished opinion (*People v. Baker*, *supra*, E015610), which is included in the record on appeal.  We note defendant's claim that this court's previous opinion cannot be used to establish the facts of the crime.  However, an appellate opinion, whether or not published, is part of the appellant's record of conviction.  "In ruling on a petition for resentencing, the trial court may consider the entire record of conviction including … the appellate opinion affirming the judgment of conviction."  (*People v. Cruz* (2017) 15 Cal.App.5th 1105, 1110; see

*[footnote continued on next page]*

2

Officers were called immediately, and they arrived at the donut shop within four minutes of the 911 call. They were told that the robbers were seen running east from the scene on Webster Street. Two customers then gave more detailed descriptions which were broadcast.

"One of the customers . . . testified that she and her husband were standing at the counter in the shop when two men entered the store. She and her husband purchased coffee and donuts, sat down at a table, and began conversing. They then heard a shot and saw defendant Baker jump over the counter and take money from the register. The two men then ran out of the store. [The customer] immediately called police.

"[The customer] positively identified the defendant Baker and another man, Mr. Fonseca, as the men who committed the robbery and murder.[] She identified defendant as the person who took the money from the cash register. She also stated that he was wearing a red bandanna at the time. She identified a bandanna which had been seized from Mr. Fonseca as the bandanna worn by the robber. She also recognized a distinctive team jacket worn by defendant."

"Mr. [L] testified that he lived in the same block of Webster Street as Mrs. Fonseca. He was acquainted with Mr. Fonseca. Fonseca, defendant Baker, and [C.C.] came to his door and asked if they could use the telephone. Fonseca was breathing

_____

*People v. Woodell* (1998) 17 Cal.4th 448, 456 ["An opinion that either affirms, reverses, or modifies a conviction is one of the most logical sources to consider in determining the truth of the prior conviction allegation."].) We further note that defendant also took his statement of facts from this court's prior unpublished opinion and has not claimed any different account of the facts.

heavily and sweating profusely.  The other two were a little out of breath.  Mr. [L]

allowed Fonseca to use the telephone and, eventually, another man in the home agreed to

give them a ride out of the neighborhood.  As the three suspects were standing in the

front yard by the car, a police car approached.  Mr. Fonseca ran away.  The officer

contacted the other two and eventually arrested them within fifteen minutes of the

robbery/murder.  Mr. Fonseca was arrested nearby.  A gun, a bandanna, and $60 were

recovered from him.  He eventually confessed to the robbery/murder."  "Defendant

testified.  He admitted being with [C.C.] and Mr. Fonseca at 7:30 p.m. on the night of the

robbery/murder."

ANALYSIS

The Court Properly Denied Defendant's Petition

Defendant challenges the trial court's summary denial of his section 1170.95

petition to vacate his murder conviction, claiming he established a prima facie case for

relief.  He argues that:  (1) the jury's true finding on the robbery-murder special

circumstance (§ 190.2, subd. (a)(17)(A)) did not automatically render him ineligible for

relief, since his trial occurred before the California Supreme Court clarified the

definitions of "major participant" and "reckless indifference" in *People v. Banks* (2015)

61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) (collectively,

*Banks* and *Clark*); and (2) the trial court violated his constitutional right to due process by

denying defense counsel's request for a stay to give him an opportunity to file a reply and

denying defendant an order to show cause hearing; these errors constituted structural

4

error, requiring automatic reversal.  As we will explain, defendant's first argument is without merit and his second fails because, whether he was entitled to have his counsel file a reply at this stage of the petitioning process, a reply written by his counsel would not have altered the result of the proceedings.

A.  *Procedural Background*

On January 7, 2019, defendant filed a petition for resentencing under section 1170.95 in the superior court and requested the court to appoint counsel to assist him.  On March 8, 2019, the People filed a response, arguing that Senate Bill No. 1437 was unconstitutional, and that defendant's petition should be summarily denied because he could not make a prima facie showing for relief under section 1170.95.  The People included as an exhibit this court's opinion in the prior appeal.  (*People v. Baker*, *supra*, E015610.)

The court held a hearing on the petition on April 19, 2019.  Defendant was represented by counsel, who stated, "We would be appearing, file a place holder, and ask for a stay, please."  The People informed the court that a jury found the robbery-murder special circumstance true and that the jury was given CALJIC 8.80.1, meaning that it was required to find that defendant was a major participant who acted with reckless indifference.  The court summarily denied the petition, and defense objected.

B.  *Relevant Law*

On September 30, 2018, the Governor signed Senate Bill No. 1437.  (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722-723.)  "The legislation, which became effective

5

on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending Penal Code sections 188 and 189, as well as by adding Penal Code section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions." (*Id*. at p. 722-723.) "Senate Bill 1437 was enacted to 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*Id*. at p. 723.)

"Section 1170.95 permits those 'convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . .' [Citation.] An offender may file a petition under section 1170.95 where all three of the following conditions are met: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of

6

changes to Section 188 or 189 made effective January 1, 2019.'" (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417; see § 1170.95.)

Section 1170.95, subdivision (c), sets forth the trial court's responsibilities once a completed petition has been filed: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

If the court issues an order to show cause, it must hold a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subd. (d).) At that hearing, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and petitioner "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*)

In short, a section 1170.95 petitioner must first make a prima facie case for relief, and if they are able to do so, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and recall the sentence.

7

(See, e.g., *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, review granted Mar. 18, 2020, S260493.)

In this case, the trial court denied defendant's petition at the first stage of prima facie review under section 1170.95, subdivision (c). "A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo." (*People v. Murillo* (2020) 54 Cal.App.5th 160, 167 (*Murillo*).)

C. *The Proper Procedure for Challenging a Felony-Murder Special Circumstance Is a Habeas Corpus Petition*

"To be eligible for resentencing under section 1170.95, [a defendant] must show that he 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as a part of Senate Bill No. 1437. [Citation.] Under the newly amended version of section 189, a defendant can be convicted of felony murder only if he was the actual killer; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in first degree murder; or 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' [Citation.] These are identical to the circumstances in which a felony-murder special circumstance applies. [Citation.] Thus, the jury's special circumstance finding shows as a matter of law that [defendant] could still be convicted of felony murder under the new definition,

8

and prevents [defendant] from making a prima facie case that he is eligible for resentencing." (*Murillo*, *supra*, 54 Cal.App.5th at p. 167.)

Defendant contends that the jury's true finding on the felony-murder special circumstance does not necessarily show that he is ineligible for relief, since he was convicted in 1994 – before the Supreme Court decided *Banks* and *Clark*. He argues that his case raises a serious question as to whether the facts support a finding that he was a major participant who acted with reckless indifference to human life under *Banks* and *Clark*. He further claims that such question "is meant to be the subject of an order to show cause" and a hearing under section 1170.95, subdivision (d).

Two recent cases, however, have found that "the proper remedy for challenging a special circumstance finding is by a petition for habeas corpus, not a petition for resentencing under section 1170.95." (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1137, 1142 (*Galvan*); see *Murillo*, *supra*, 54 Cal.App.5th at p. 168.) The *Murillo* court stated: "As we explained in *Galvan*, a defendant subject to a pre-*Banks* and *Clark* special circumstance is ineligible for resentencing under section 1170.95 because of the basis of his claim. Although [the defendant] asserts that he could not now be convicted of murder, 'the alleged inability to obtain such a conviction is not "because of changes" made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstance finding in *Banks* and *Clark*. Nothing about those requirements changed as a result of Senate Bill No. 1437. Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in

9

an underlying felony and acted with reckless indifference to human life.  If [the defendant] is entitled to relief based on *Banks* and *Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus.' " (*Murillo*, at p. 168.)

The *Murillo* court went on to state that "[b]y requiring a defendant to seek relief via habeas corpus, we avoid creating a disparity in which similarly situated defendants' cases are evaluated under different standards based solely on the date of their convictions. 'Defendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to challenge the sufficiency of the evidence of the special circumstance finding on direct appeal, where the People would need only to show that substantial evidence supported that finding.  If the judgment is affirmed, generally it would be the law of the case in any proceedings thereafter as to those findings. [Citations.]  But where, as here, a defendant was convicted before *Banks* and *Clark*, if the defendant could bring a collateral challenge under section 1170.95, the prosecution would be required to prove the special circumstance beyond a reasonable doubt. [Citation.]  Yet nothing in the language of Senate Bill No. 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants.' " (*Murillo*, *supra*, 54 Cal.App.5th at pp. 168-169.)

We agree with both *Galvan* and *Murillo* and hold that the proper procedure of challenging a felony-murder special circumstance is a habeas petition.

D.  *As a Matter of Law, the Special Circumstance as Defined by* Banks *and* Clark *Applies to Defendant*

10

Assuming arguendo that defendant can challenge the validity of a felony-murder special circumstance by a petition under section 1170.95, his claim fails because his record of conviction, as a matter of law, establishes that the jury's special circumstance finding is valid under the standard established by *Banks* and *Clark*.

Whether there is sufficient evidence that defendant was a major participant in the robbery who acted with reckless indifference to human life is a question we can decide on appeal. A "[d]efendant's claim that the evidence presented against him failed to support [a] robbery-murder special circumstance [finding made prior to *Banks* and *Clark*] . . . is not a 'routine' claim of insufficient evidence." (*In re Miller* (2017) 14 Cal.App.5th 960, 979-980.) The "claim does not require resolution of disputed facts; the facts are a given." (*Id.* at p. 980.)

Section 190.2 sets forth the special circumstances under which murderers and accomplices can be punished by death or life without possibility of parole. One such circumstance is when a defendant is found guilty of first degree murder committed while he was engaged in, or was an accomplice to, the commission or attempted commission of a robbery. (§ 190.2, subd. (a)(17)(A).) However, as explained *post*, a death resulting during the commission of a robbery (or any other felony enumerated in § 189) is insufficient, on its own, to establish a felony-murder special circumstance for those defendants, like defendant in this case, who were not determined to be the actual killer. Such defendants can only be guilty of a felony-murder special circumstance if they aid in the murder with the intent to kill (§ 190.2, subd. (c)), or, lacking intent to kill, aid in the

11

felony "with reckless indifference to human life and as a major participant." (§ 190.2, subd. (d).)

Section 190.2, subdivision (d), was enacted in 1990 to bring state law into conformity with prevailing Eighth Amendment doctrine, as set out in the United States Supreme Court's decision in *Tison v. Arizona* (1987) 481 U.S. 137. (*Banks*, *supra*, 61 Cal.4th at p. 798.) "In *Tison*, two brothers aided an escape by bringing guns into a prison and arming two murderers, one of whom they knew had killed in the course of a previous escape attempt. After the breakout, one of the brothers flagged down a passing car, and both fully participated in kidnapping and robbing the vehicle's occupants. Both then stood by and watched as those people were killed. The brothers made no attempt to assist the victims before, during, or after the shooting, but instead chose to assist the killers in their continuing criminal endeavors. [Citation.] The Supreme Court held that the brothers could be sentenced to death despite the fact that they had not actually committed the killings themselves or intended to kill, stating: '[R]eckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result. [¶] The [brothers'] own personal involvement in the crimes was not minor, but rather, . . . "substantial." Far from merely sitting in a car away from the actual scene of the murders acting as the getaway driver to a robbery, each . . . was actively involved in every element of the kidnap[p]ing-robbery and was physically

12

present during the entire sequence of criminal activity culminating in the murder[s] . . . and the subsequent flight. The Tisons' high level of participation in these crimes . . . implicates them in the resulting deaths.' " (*In re Ramirez* (2019) 32 Cal.App.5th 384, 393-394, quoting *Tison* at pp. 157-158.)

"The *Tison* court pointed to the defendant in *Enmund v. Florida* (1982) 458 U.S. 782, . . . (*Enmund*) as an example of a nonkiller convicted of murder under the felony-murder rule for whom the death penalty was unconstitutionally disproportionate. Enmund was the driver of the getaway car in an armed robbery of a dwelling whose occupants were killed by Enmund's accomplices when they resisted. [Citation.] In deciding the Eighth Amendment to the United States Constitution forbids imposition of the death penalty 'on one such as Enmund . . .' the high court emphasized that the focus had to be on the culpability of Enmund himself, and not on those who committed the robbery and shot the victims [citation]. 'Enmund himself did not kill or attempt to kill; and, . . . the record . . . does not warrant a finding that Enmund had any intention of participating in or facilitating a murder. . . . [T]hus his culpability is plainly different from that of the robbers who killed; yet the State treated them alike and attributed to Enmund the culpability of those who killed the [victims]. This was impermissible under the Eighth Amendment.' " (*In re Ramirez, supra*, 32 Cal.App.5th at p. 394.)

In *Banks*, the California Supreme Court described what is often referred to as the *Tison-Enmund* spectrum. "At one extreme" are people like Enmund—" 'the minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have

13

had any culpable mental state.' " (*Banks*, *supra*, 61 Cal.4th at p. 800.) "At the other extreme [are] actual killers and those who attempted or intended to kill." (*Ibid*.) Section 190.2, subdivision (d), covers those people who fall " 'into neither of these neat categories' "—people like the Tison brothers, who were major participants in the underlying felony and acted with a reckless indifference to human life. (*Banks*, at p. 800.)

The California Supreme Court articulated several factors intended to aid in determining whether a defendant falls into this middle category, such that section 190.2, subdivision (d), would apply to them. "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or *using* lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant *present at the scene* of the killing, in a position to facilitate or *prevent* the actual murder, and did his or her own actions or *inaction* play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted, italics added.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)

The defendant in *Banks*, Lovie Troy Matthews, was convicted of first degree murder with a felony-murder special circumstance based on his having acted as the getaway driver for an armed robbery in which his codefendant Banks and others participated, and in which Banks shot and killed one of the robbery victims while

14

escaping. (*Banks*, *supra*, 61 Cal.4th at p. 795-797.) Considering Matthews's involvement in the robbery against the factors just enumerated, the Court "placed [him] at the *Enmund* pole of the *Tison-Enmund* spectrum." (*In re Ramirez*, *supra*, 32 Cal.App.5th at p. 397.) As a result, the court concluded, "the jury's special-circumstance true finding cannot stand." (*Banks*, at p. 811.)

Not long after *Banks*, the Court revisited this issue in *Clark*, also concluding the evidence was insufficient to support the defendant's robbery-murder special-circumstance findings. (*Clark*, *supra,* 63 Cal.4th at p. 611.) The defendant in Clark planned a burglary of a computer store to occur after the store was closed. According to the plan, his codefendant was to carry out the burglary and carry an unloaded gun. However, his codefendant ended up carrying a gun loaded with one bullet and fired that bullet when he unexpectedly encountered a store employee's mother, who had come to pick up her son; the bullet killed her. (*Id.* at pp. 537, 612-613.) The Supreme Court concluded there was insufficient evidence Clark acted with reckless indifference to human life because: (a) Clark was not physically present when his codefendant killed the employee's mother and was therefore unable to intervene; (b) there was no evidence Clark knew his codefendant was predisposed to be violent; and (c) Clark planned for the robbery to take place after the store closed, and the gun was not supposed to be loaded. (*Id.* at pp. 619-622.) In sum, the court believed there was "nothing in [Clark's] plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery." (*Id.* at p. 623.)

15

Here, in contrast to *Banks* and *Clark*, defendant was a willing participant in the violent manner in which the robbery and murder took place. He and his cohort entered the shop, fired a shot with a gun, took money from the cash register, and ran out. Thus, they used a gun to threaten and kill the victim and facilitate the robbery. The jury found true the allegation that defendant or a principal was armed with a firearm. (Former § 12022, subd. (a)(1).) It is not clear if defendant was the one who fired the shot; however, if he was not, he at least watched without intervening when his cohort used the gun to facilitate the robbery. Being at the scene of the shooting, he could have tried to stop his cohort's violent behavior or help the victim once the victim had been shot, but he did neither. Rather, after the gun was fired, defendant jumped over the counter and took the money from the register. He and his cohort then fled the scene. The defendants who have been able to get their special circumstance findings vacated are those who were not wielding guns themselves and also not present for the shooting (either because they were acting as getaway drivers or because they were involved in the planning of the crime only). Defendant's conduct is clearly distinguishable. "We are not aware of any case where a court overturned a special circumstance finding in which the defendant was present and bore such a strong responsibility for the victim's death." (*Murillo*, *supra*, 54 Cal.App.5th at p. 173.)

As the court in *Murillo* recognized, "[i]n *People v. Smith* (2020) 49 Cal.App.5th 85, 95-96, our colleagues in Division 5 of [the Second District] held that a defendant could challenge a pre-*Banks* and *Clark* special circumstance finding in a petition under

16

section 1170.95. The court also held that it was inappropriate to determine at the first stage of review under section 1170.95 whether the defendant met the standard for a special circumstance under *Banks* and *Clark* because at the final eligibility hearing, a petitioner has the opportunity to introduce new or additional evidence regarding his eligibility for resentencing. [Citation.] The court in *Smith* held that, because a trial court cannot know what evidence a petitioner may submit, it cannot at the first stage of review determine that a petitioner was a major participant who acted with reckless indifference to human life." (*Murillo*, *supra*, 54 Cal.App.5th at p. 173.)

We agree with *Murillo* "that a petition under section 1170.95 cannot be used to challenge a felony-murder special-circumstance finding. Even if we assume that such a challenge can be asserted in a section 1170.95 petition, we disagree with *Smith* regarding the standard for evaluating the evidence to determine whether a defendant has made a prima facie showing of eligibility under that section. If as a matter of law the record of conviction shows, as it does here and did in *Smith*, that the defendant was a major participant who acted with reckless indifference to human life, and the defendant does not claim he has new evidence to present, he has not made a prima facie case. This view is consistent with existing case law construing section 1170.95, including *Lewis*, *supra*, 43 Cal.App.5th 1128, review granted March 18, 2020, S260598 and *Verdugo*, *supra*, 44 Cal.App.5th 320, review granted March 18, 2020, S260493." (*Murillo*, *supra*, 54 Cal.App.5th at p. 173.)

17

Here, like the record in *Murillo*, "the record of conviction establishes as a matter of law that [defendant] was a major participant who acted with reckless indifference to human life, as those terms were clarified in *Banks* and *Clark*, and [defendant] does not claim to have any new evidence on this issue. Therefore, even if his claim [were] cognizable under section 1170.95, [defendant] was not eligible for relief under that statute." (*Murillo*, *supra*, 54 Cal.App.5th at p. 173.)

E. *Any Error in Denying Defendant's Request to Have His Counsel File a Reply Brief Was Harmless*

Defendant also argues that the court prejudicially erred by denying his petition without providing him the opportunity to file a reply brief to the prosecution's response and without an order to show cause hearing under section 1170.95, subdivision (d). He claims that he was thus deprived of the procedural protections conferred by the statute, and the court's errors constituted structural error.

We initially note that defendant had 30 days after the prosecutor's response was served to file a reply. (§ 1170.5, subd. (c).) He says the prosecutor's response was served by mail on him in prison on the same day court appointed counsel, which was apparently March 8, 2019. The court held a hearing on the petition on April 19, 2019, which was over 30 days later. Thus, defendant did not file a reply brief, even though he was afforded the time provided by the statute. We further note that, at the hearing, defense counsel simply asked for a stay, but did not establish good cause for the deadline to be extended. (§ 1170.95, subd. (c).)

18

In any event, even if the trial court somehow erred, the error was harmless beyond a reasonable doubt. First, as noted *ante*, the proper procedure for challenging a felony-murder special circumstance is via a habeas petition. Moreover, even if defendant could challenge the validity of his conviction by means of a section 1170.95 petition, given the trial evidence, counsel would not have been able to demonstrate in a reply brief, or otherwise, that defendant was not a major participant who acted with reckless indifference to human life.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

I concur:

RAMIREZ
P. J.

[*People v. Baker*, E072712]

MENETREZ, J., Concurring.

I concur in the majority opinion except as to parts D and E of the Discussion. For the reasons set forth in my concurring opinion in *People v. Jones* (Oct. 23, 2020, E072961) __ Cal.App.5th __ [2020 Cal.App. Lexis 1003], I agree that a petition under Penal Code section 1170.95 is not a proper procedural vehicle for challenging a murder conviction by attacking a prior special circumstance finding. I therefore agree that the trial court correctly denied the petition and that any error in not allowing defendant to file a reply was harmless under any standard. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

If defendant wishes to attack his special circumstance finding under *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, he remains free to do so by means of a petition for writ of habeas corpus. I do not join part D (or part E, which is partially based on part D) of the majority opinion's Discussion because, in my view, it prejudges such a habeas petition, which has yet to be filed.

MENETREZ       
J.

1